The opinion of the Court was delivered by
Duncan J.
This was an action of debt on bond, in the penalty of 1000/., with the following condition... [Here his honour stated the condition.] The parties went to trial on the merits by agreement, without regard to the pleadings.
. The argument was principally confined to the exceptions to the charge of the Court, and branched out into two heads of inquiry. The first was, on the extent of the' covenant'in the condition; the plaintiff in error contending, that this only related to the delivery of possession, on the 1-5th April, 1790, its purpose being- only to protect Heller from interruption in taking possession by Mounce Jones, or any other person* and contained a covenant against George Miller, and his heirs only, as to the. title. The conveyance' referred to in the bond was barely an assignment of the title-and interest of Miller, with a covenant of warranty against him and his heirs, and all claiming under him and them.
The defendants contended, that the covenants were for quiet enjoyment, and warranty against Mounce Jones, and all claiming under him ; and that as the testator was evicted by Nicholas Jones, the covenants are broken.'
*36 The. second was, the measure of damages: the defendants . in error contending, that the bond was given for indemnity, and therefore they were entitled to all the damages they had., sustained.; that it was intended to keep them whole ; a stipulation for, actual compensation; and to satisfy them for the real value of the-land, with all its improvements, on the day of eviction, and all costs, in defending the possession and title. It was admitted that if the pleadings had been drawn up at large, the breach assigned would have been the eviction by. Nicholas Jones, claiming-under Mounce Jones, and likewise that George Miller claimed under Mounce Jones. It was further admitted, that Miller recovered in full against Mounce Jones, and delivered possession to Heller. While the plaintiff insists, that if the eviction falls within the covenant, it should be considered entirely as a covenant of warranty, in which the value at the time of conveyance, the money paid with interest without relation to the rise in value or the improvements made by Heller could alone be re- ■ covered. If -the Court should be of opinion with the defenr dant on the first point, it will become unnecessary to give one on the second ;as that goes to the foundation of the right to recover any thing. " ■ .
There is one rule which enters into the construction of all deeds ;—they are to be construed agreeably to the intention .of the parties, “ and that intention ought to be adjudged of •the several parts of the deed, as a general issue out of the evidence. Intent ought to -be picked out of every'part, and not out of one word only.” Winch, 98. At present, the chief object of Courts of law is, to discover thé true meaning of the parties-to any contract, and to construe it accordingly. It is proper to consider the state of the parties and the property,'when-the .bond was given, and determine from that and the whole condition, the purpose for which' it was given, without rejecting any word, if consistent effect can-be given to it. 'George Miller had purchased the land-, as the estate of Mounce Jones, and obtained the Sheriff’s deed on the 15th June, d789; and conveyed to Heller, on the 16th November, Mounce Jones being, then in possession. On the 29th December,- he gave this bond, by which he bound himself to déliver possession on or before the 15th April, following.
*37 One thing we are assured of; that is, that George. Miller never intended to warrant the title further, than as against himself and his heirs, and all claiming under him or them; 7 ° B 7 for such is the special nature of the warranty in the assignment, and such is the concluding covenant in the Bond. Now-if the covenant was a general covenant as to quiet enjoyment, it would be quite inconsistent with the restricted covenant of warranty, as to the title ; for then it must be said, that he intended to give a limited and an unlimited warranty. Our object is, to find out what is the meaning of the parties, without any regard to the place in which the covenants stand in theinstrument, or attention to grammatical rules. So far as' respects the title, Miller had entered into- all the covenants he intended. He had • not, and he could not give immediate .possession; for Mounce Jones held that; and the purpose of the parties, when the bond was given, was, to secure the delivery of Jones’s possession to Heller. The condition-is, “ the said George Miller or his heirs shall and will deliver possession of the said premises to ■ John D. Heller, at or before the 15th April” That is one covenant. And wairant and forever defend the said premises against Mounce Jones, the present proprietor, and all and every person attempting to hinder said John D. Heller from taking possession thereof, so as aforesaid” is,another distinct cove-, nant. “ And against the said, George Miller, and his assigns,” is a' third covenant. These two last covenants are contained in one sentence, and throughout the sentence the warranty runs. It would be an unreasonable supposition, that George Miller intended to enter into a perpetual covenant against the tortious entries of Mounce Jones and all the world. For if the defendant’s construction be a just one, it would include all hindrances, legal or illegal, by all persons, and to the end of time. This cannot be the fair construction of this instrument. The obtaining possession was the main design ; and the whole of the first and second covenants refers to the possession. To the taking of possession as aforesaid, Mounce Jones, and all and every person audparty stand in the same relation, as t'o this covenant. . .
The covenant was a special covenant respecting the taking the possession—possession as aforesaid; that is,' at the time George Miller covenanted to deliver it; and is an express co-’ *38 venant, on the part of George Miller, that he will warrant that neither Mounce Jones, nor any other person, should attempt; tp hinder Heller- in taking possession, on th,e aforesaid 15th April, It is not at all probable, or in any way to be accounted for, that this man, who was. so cautious in warranting the title, should enter into covenant, to warrant and defend the possession.for ever. ■■
It is of'some weight wjth me, that every covenant respecting Mounce Jones, is pérsonal to him by name, and to him as the present possessor. I cannot suppose that this was acci-dental, and not intended to confine it to him, when in the same sentencé, the covenant as to the title, is against George Miller,- and his heirs and assigns, and not against him alone. I do not say, that if from the whole context it appeared, that the parties intended a perpetual covenant- against. Mounce Jones, and all claimérs under him, but'that the law might so construe.it. But here, there is nothing, which would, irresistibly forcé this inference, but' quite the contrary ; and the Court-ought, not to indulge parties, in leaving, out words, which are ordinarily introduced, and by which the real meaning of the parties might be Understood; and this is increased by the omission in one covenant, and the insertion in another.
A covenant for quiet enjoyment, is very different from one warranting, that the grantee should meet with no hindrance in taking possession at or before a stated day fixed by the instrument. No breach of the covenant is alleged; It must be taken, that it was not broken, and that neither Mounce Jones, nor any other person, hindered him .from taking that possession. ■ I. cannot put any other construction on these words, than that George Miller- says—“ I will not covenant for the goodness of my title, but, I will covenant to deliver you possession, on the 15th of April,- and will' warrant, that in taking possession, you shall not be hindered by Mounce Jones, or any other person”. Taking possession is one act, and not a succession of acts, and does not signify a continuance of •possession ; and George Miller says, “ I will not enter into any warranty of the possession, I will not defend against any disturbance, or interruption, except it is by myself, or my. heirs and assigns-; I will undertake to put you in possession,, but not to. keep, you thére”. The present possession of Mounce Jones, and the delivery of the possession was all *39 that was in the view of the parties or scope of the covenants. Looking at the instrument, this is the construction, and there Is nothing so doubtful, or ambiguous in the covenants, as to require the conduct of the parties to be called in, to impose a different construction; there is no express covenant for quiet possession or enjoyment, and so material a covenant c'annot be t J J 7 implied or added to it,.by the'conduct or declaration of the parties. " Courts, both of law ánd equity, constantly advert to the situation of the parties and the property, in order to enable them to construe ambiguous and-ill penned -instruments, ; but it is now clearly settled, that in the construction of a deed or agreement, the acts of the parties cannot be taken into consideration, Sugden, 118; and parol evidence of the intention of the parties’ ought not to have been received. On the first argument, the acts of Miller, and his declarations, had their influence in the view which I then took of these covenants, and I was, I acknowledge, disposed to consider, that in .this case, the parties themselves had put a construction on these .covenants, and were therefore bound by it. I am now satisfied, this view was erroneous, and that all this evidence should be disregarded, and have no-.influence on the construction of the -bond. -,
The clause respecting the possession,^ one; b.ut if they were distinct, the second would be consequential to the-first. The just rule-of construction, will, be found in 1 Saund. 60, it is this—where any sentence contains distinct covenants, and there' are words of restriction, either in the prefatory, or concluding part ;■ these words must be extended to every part of the sentence, unless the intention of the parties appears to require a. contrary construction; there are many decisions confirming this rule, and some of them of a very early date. In Broughton v. Conway, Moore, 58, Dyer, 240, a condition that vendor had not done or would rcoi.t/oany'act, to disturb the vendee, but that he should hold and enjoy, without the disturbance of vendor, or any other person, was confined to acts done by the former, becau'se the latter words were referable to theformer; and it is no breach, if the assignee be disturbed by the act of any other person, if it be without the act of the assignor, Powell on Cont. 403. So if one covenant that lands are of the value of 1000/. per annum, and so shall continue, notwithstanding any act done or tó be done by him, the *40 words, “ notwithstanding any act,” extend as. well to the time of covenant made, .as to . the time. future'; and, though they be not of that value, the covenant will not be broken, exGept some act done by the covenantee b.e the cause of it. Rich v. Rich, Cro. El. 43, and Gervis v. Peade, 615. And aga'n 1° 3 Lev. 46, there were four covenants : the first for seisin in fee, the second for right to convey, the third against . , , ’ , , c , ™ °n incumbrances, and the fourth for quiet enjoyment. 1 he first, third, and fourth covenants, were expressly restrained to the' act of the grantor, his fathér, and grandfather, and the second was unrestricted. The whole Court agreed that the covenants were-distinct and several, and three Justices, in opposition to North, Ch. J., held, the,first and second covenants-were-synonymous, and therefore as the grantor had covenanted against his own acts, it could' not be intended, that-he should immediately afterwards covenant against all the world.
A series of decisions has fixed a principle, that however general the words of a covenant may be, if standing alone, yet if from other covenants in the saíne deed, it is plainly" and irresistibly to -be inferred, that á party, could not have intended to use the words in the general sense which they import, the Court will limit the operation. of the general words of any covenant in the same deed. The question therefore, always^ is, whether such irresistible inference does arise 'from concomitant covenants; if it does, they-will control the general words of-the covenant. It is not required here to restrain general expressions, by concomitant restrictive ones, for there is no general covenant for quiet enjoyment, or against disturbance, but a special one, .respecting the-taking possession, and not a covenant against interrup- • tion or disturbance of the possession, when it was acquired. It is not asked by. the plaintiff in error, to restrain a general covenant by inference, and prune it down to a special one; but the defendants in error, require a construction to, change' a special covenant, and enlarge it into a general one, and introduce other covenants by inference, whilst so far -from being a necessary ihference, there is an irresistible inference to the contrary. ' ■ ■ ' < -
“ Against Mounce Jones, and all other persons attempting to hinder John D. Heller from taking possession thereof, so *41 as aforesaid, will warrant and for ever defend.” To ascertain the sense of this, we have only to look to the line' in the “ instrument next abové ; that' explains the general expression. > 1 u . 1 as aforesaid,” and shews it to be, a taking possession, at or before the 15th April. -If this was a general covenant for quiet possession and enjoyment, what would be the use of any other a • %j •/ • . . •* restricted covenant, for this would supersede them all; for a grantee might say, ‘l I- cannot sue you on the covenant for title, but I have a cause of action on a general covenant, for perpetual possession and quiet enjoyment.” . Taking .possession is one act, limited here to a point of time': quiet enjoyment includes every thing, and is perpetual: into á covenant for the latter, George Miller did not enter, into the former he did, and that he fulfilled. If there had been á general covenant for quiet enjoyment, separate and distinct from the covenant for delivery of possession, it perhaps would not have-been restrained by the restrictive covenant, as to delivery of possession, for that would be a covenant of a materially different import, and directed to'.a different object. The covevant for quiet enjoyment, is an assurance against the consequences of a defective title, and of any disturbances therefor; and if he be lawfully evicted, the grantor by such covenant, stipulates to indemnify him at all events. But foe.covenant for delivery of possession, and that there shall be' no attempt to hinder him from taking possession at, or .before a particular day, is a quite different, covenant,; it is a covenant against all acts of interruption, legal of illegal, with or without title, in taking the possession at the time stipulated, and when the possession is taken without interruption, that cove-, vant has performed its office, and has no continuing obligation..
It .has been with great' earnestness pressed on the ¡Court, that this bond has received a construction by this Court, in' the case of Heller & Miller v. Jones’ lessee, 4 Binn. 61. This is not so. The bond is called an indemnifying bond.' The bond itself was'not given in evidence, but in order to.connect Miller & Heller in the action, Nicholas Jones v. Mounce Jones, and in the defence set up by Miller, to shew a fraud in the scire facias on the judgment, between the plaintiff and defendant in the proceedings, and that the whole was a contrivance to defeat George Miller of his judgment, and from the circumstances, to draw the conclusion that at the trial *42 on, the scire facias, Heller was virtually a party, and that this defence being set up in the suit, and a verdict against it, the verdict was conclusive between all parties and privies. Notice had been giyen Heller to produce this bond ; he did not produce it, and evidenpe was given, that when Miller sold'to Heller, he gave him á bond to indemnify him ; but the bond was not given in evidence, nor parol evidence of its contents, otherwise than by the witness testifying, that Miller had given Heller a bond of indemnity against the claims of others.1 If the witness was under mistake as'to the. nature of the indemnity, Heller had an opportunity to shew that mistake, by producing the bond itself. But for the purpose, it was introduced, this ,bond; would establish the connection -with its special covenants equally as if it had contained general covenants. The- case reported very fully shows, that this bond and its conditions, are now for the first time; to receive a judicial construction in this Court; and the Court are of opinion, that there was error in the Court of Common Pleas; in deciding that this breach, the .eviction by Nicholas Jojies, was within any of the covenants in the condition of the bond.
This malces.it unnecessary to decide on the measure of damages which should obtain on a bond with a penalty, conditioned to warrant either title, perpetual possession, or quiet enjoyment, because the plaintiff in error is not liable at all, and there is-no cause .of action,-—no breach assigned on record, falling within ány of the covenants ; and it would be giving an extra judicial 'decision, in a very important question, which ought always to be avoided. The judgment is therefore reversed. . ■
Judgment reversed,